Lobalzo, Appellant, *v*. Varoli.

Argued March 15, 1966. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

6

*Charles F. Dean,* for appellant.

*David J. Armstrong,* with him *Dickie, McCamey & Chilcote,* for appellees.

Opinion by Mr. Justice Cohen, June 24, 1966:

This action arises out of a motor vehicle collision. At the conclusion of the court's charge, the trial judge granted both counsel a general exception and requested points of correction. No portion of the charge urged as error here was specifically excepted to. The jury returned a verdict for the defendant, and plaintiff sought a new trial, alleging error in the charge. His motion was denied by the court en banc. From judgment entered on that order he took this appeal.

Plaintiff argues that the charge was erroneous in three respects. He asserts that the charge: (1) failed to define contributory negligence, (2) inadequately defined proximate cause, and (3) misled the jury by causing them to believe that plaintiff was contributorily negligent merely because he crossed the center line of the road to his proper lane.

The law is clear that on an appeal from the grant or refusal of a new trial the order of the lower court will not be reversed where only a general exception was taken unless the errors committed were basic and fundamental and could not have been corrected at the trial. *Ason v. Leonhart,* 402 Pa. 312, 165 A. 2d 625 (1960); *Hill v. Gerheim,* 419 Pa. 349, 214 A. 2d 240 (1965).

This rule is founded on the principle that counsel shall not sit idly by, take his chances with instructions

given at trial, and then, having lost the case, seek a new trial and a second opportunity, on the ground that the charge was prejudicial to his client. If the rule should ever be relaxed, it is not here, for the legal issues involved are singularly uncomplex. Counsel who ought to be fully aware of the law involved in this case can have no excuse for failing to request a special exception if he thought the judge had erred. To remand in such cases as this would not only be sanctioning the failure of counsel to take special exceptions, but also would lead to further burdening of our trial courts.

The court en banc found no such error as would warrant the grant of a new trial. On a review of the record and in the light of the principle set forth above, we fully agree.

Judgment affirmed.

Mr. Justice EAGEN concurs in the result.

_____

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

While I am in full agreement with the opinion of the majority, I feel constrained to add a few, brief observations.

This litigation arose out of a conventional motor vehicle collision, each side accusing the other of inattention and negligence. As the majority notes, the issues present were "singularly uncomplex." Yet, although the case is routine and unexceptional in every respect, involving largely a factual dispute to be resolved by the fact finder's assessment of credibility, this Court is asked for the second time to set aside a jury verdict for defendant and to impose the case again on our already overburdened trial courts.

At the outset, the full implications of such a course of action must be considered in context. We do not here deal with a matter unlikely to present itself in the near future, or with one that will not have a significant effect on the very serious problem of trial court

backlog. A recent study revealed that 92% of the jury cases in Philadelphia County and 86% of such cases in Allegheny County are in trespass. Levin & Woolley, Dispatch and Delay, 9 n. 39 (1961).

It is clear, therefore, that it is in trespass actions, and most especially in personal injury litigation arising out of motor vehicle accidents, that the problem of trial delay is most acute. And, it is also in this area that the legal principles involved are most repetitious and familiar to trial counsel.

In the present case, to permit plaintiff to obtain a second trial, on the ground that the instructions to the jury contained fundamental error, in light of the elementary and routine nature of the principles involved, would do a great injustice to countless numbers of persons who are compelled to endure oppressive delay or to settle claims at a fraction of their value because timely judicial relief was not available. While I would heartily approve of ordering a new trial in any case in which such action would be in the interest of justice, I would find no justice in setting aside the endeavors of all those who participated in the trial below merely because plaintiff's counsel now discerns some disadvantage, problematical at best, to his client, a disadvantage which he had every opportunity to discern and to seek to have rectified at trial.

The record here discloses that the court, at the completion of its charge, inquired whether counsel objected to the charge as given, or desired any amplification or addition to the instructions. Counsel replied in the negative. In my view, given the elementary nature of the applicable legal principles, such acquiescence by counsel precludes an assertion of error in the charge as grounds for setting aside the verdict. As this Court stated in *Segriff v. Johnston*, 402 Pa. 109, 113, 166 A. 2d 496, 499 (1960), "a proper administration of justice requires that new trials be

not granted on errors which counsel had ample opportunity to correct. . . ." The purpose of this rule will never be more fully achieved than by its application to the present case. Had counsel apprised the court of his objection to the charge, by taking a specific exception, any possible prejudice to plaintiff by reason of the court's instruction on contributory negligence and proximate cause could have been and undoubtedly would have been cured. Since it was entirely possible for counsel, by manifesting his disagreement with the charge, to have prompted curative efforts on the part of the court, thus avoiding the appalling and burdensome waste which retrial engenders, I am able to ascertain no reason for upsetting the verdict of the jury and granting a new trial in this case. To do so would be to reduce the threshold of fundamental error so as to encourage counsel to sit idly, to take his chances with the instructions given at trial, and then, having lost the case, to seek a second opportunity to try his case on the ground that the charge was prejudicial to his client. We should no longer be willing to tolerate such tactics at the expense of our overburdened trial courts and the litigants who are adversely affected by lengthy delays in the vindication of their legal rights.

Accordingly, I fully approve of the action of this Court today in adopting a more realistic approach to the matter of fundamental error. From this point on, it should be clear that, in the absence of a specific exception and a curative effort at trial, we will not allow the assertion of error predicated on instructions involving principles as routine and commonplace as those here involved. So long as the principles involved are ones with which any lawyer of competence must be presumed to be familiar, the failure to take specific exception will preclude the grant of a new trial.

Finally, it should be noted that the present case does not present the appropriate occasion for defining

what would support the grant of a new trial even in the absence of a specific exception to the charge. Such a definition should, and I trust will, be resolved on a case by case analysis of the particular circumstances and legal principles involved. Thus the approach embodied in today's decision does not in any way restrict the right of an appellate court, under appropriate circumstances, to set aside a verdict and to grant a new trial because of fundamental error in the court's instructions. What is sought to be accomplished is that a practice grounded in indifference and resulting in waste be discouraged, and the administration of justice benefited by removing at least one of the causes of the delay which restricts access to our courts.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

The trial judge in this case failed to charge on contributory negligence, which was distinctly in the case, and he admitted that "a definition of contributory negligence would undoubtedly have been proper." The Majority of this Court, however, apparently more concerned about form than with substance, more attentive to shadows than reality, says that counsel for the plaintiff, against whom the verdict went, may not ask for a new trial because at the end of the court's charge he asked only for a general exception. The law is unquestioned that when the omission complained of goes to a basic fundamental in the case, the general exception is enough upon which to base an order for a new trial.

But the Majority, in criticism of plaintiff's counsel, says: "Counsel shall not sit idly by, take his chances with instructions given at trial, and then, having lost the case, seek a new trial and a second opportunity, on the ground that the charge was prejudicial to his client."

I would like to offer an observation on this observation made by the Majority. If the lawyer is to be declared at fault in not noting an error made by the trial judge, why isn't the judge declared to be at fault in perpetrating the error in the first place? I do not intend by my discussion here to indicate any lessening of appreciation of the ability of the trial judge here involved. He is an excellent judge and enjoys the respect of his colleagues and of the bar. Nevertheless, a duty to the bench and bar impels me to state that where the presiding judge is charging on a phase of the law immediately applicable to the facts in the case, he should be as familiar with that law as the lock on his briefcase, and it is his responsibility to instruct the jury properly. If he fails, as failure is apparent here, to tutor the jury on a primary element of consideration in the cause, the omission constitutes basic error which should result in a new trial even though the lawyer does not specifically take exception to that part of the judge's inadequate charge.

I thus ask the Majority: if it finds fault with the lawyer for "sitting idly by" while error is being committed, why isn't it equally critical of the trial judge for "sitting idly by" allowing the error, which he made, to go uncorrected? Who should know more about the error than the judge who is the driver at the wheel, the engineer at the throttle and the pilot on the ship?

Counsel for the plaintiff complained that the judge did not properly charge on the law of proximate cause. The Majority Opinion makes no attempt to point out what it was that plaintiff's counsel was complaining about, so I will fill in the vacuum by quoting from the charge on this point: "Proximate cause means that without which the accident would not have occurred. It is necessary that not only the accident be due to the negligence of the defendant but also that the injuries resulting therefrom be due to his negligence because

I'm sure that you know, without my telling you, that, for example, in this or any other case, if a plaintiff claims a low back injury and such injury is due to arthritis and not due to the accident which may have been caused by the defendants, then, you would not expect to award the plaintiff damages for the low back injury."

This portion of the charge began, as can be seen, with an instruction on the connecting span between an act of negligence and the incident which causes injury and ended with passing over, without any boat or connecting passageway, to another bridge with instructions on the span required between the accident itself and the injury or ailment of which the plaintiff complains. Negligence, accident and physical results are three different phases of a trespass action and may not be merged into one or may they be interchanged one with another. The phrase "proximate cause" could, of course, with correctness of language be employed to indicate a connection between physical violence done a person and a succeeding disablement, but it is normally used in the law of negligence in referring to the agency immediately precipitating the impact which causes the accident or mishap which is the basis of the lawsuit. The unhappy linking up of the cause for an accident with the cause for an injury might well have confused the jury.

I believe that the jury may also have been misled by the court's charge on the matter of the plaintiff's crossing over the center line of the road in order to get to his proper lane. The judge said: "If you believe the plaintiff here that he was proceeding lawfully down this highway and that the truck speeded past him on the right and hooked on to his right front wheel, then the truck driver is negligent, and if, on the other hand, you believe that the plaintiff was coming down the

wrong side of the road and cut over, then, of course, it was his fault."

When the plaintiff "cut over" he was proceeding to his legal side of the road. The jury may have understood from this part of the charge that the plaintiff was doing a wrong thing in moving over the eastward lane, which is the direction the plaintiff intended to pursue. We believe the judge should have more clearly spelled out just what was the factual situation and clarify it in such a manner that the jury would know that, even though the plaintiff may have been doing a right thing, if he accomplished his objective negligently, he could be guilty of contributory negligence. Here again, I believe the jury could have been confused by the instruction.

I repeat that I personally have high respect for the ability of the trial judge in this case. The main purpose of this Dissenting Opinion is to go on record in opposition to the notion inescapable in the Majority Opinion, namely, that a trial is in the nature of a game of chess, and not a serious enterprise dedicated to the ascertainment of truth and the rendition of justice.